SALINA A. CHARLTON

*v.*

THE COLUMBIA REAL ESTATE COMPANY.

[Filed February 21st, 1903.]

1. An agreement made and signed by the agent of a corporation provided that a lease of the company's lands should be given for a term of ten years, and at the same time a receipt was signed by the agent for $100 "on account of agreement for lease for which details are to be settled on." An unsigned draft of a lease was afterwards obtained to be drawn by the corporation owner, and sent to the intending lessee. This draft contained terms and details, which were not contained or referred to in either the signed agreement or receipt.—*Held*, the signed agreement and receipt did not definitely settle the terms of the proposed lease. The unsigned draft of lease contained terms different from those contained in the signed agreement and receipt. The parties did not come to any concluded contract between them.

2. The agreement intended to be made by the parties contemplated a letting for the lands for ten years. Such an agreement, even if actually concluded, is, if not signed by the lessor and lessee, controlled by the statute of frauds, and has only the force of a lease at will, and will not support a decree that the owner shall execute and deliver a lease of the land for a ten years' term.

3. No possession of the lands was taken by the proposed lessee. No improvements were made thereon by her. She expended some money in getting from an architect plans for proposed improvements, and paid the $100 named in the receipt, which money was returned to her. These incidents of the intended contract were not such acts of partial performance by the proposed lessee as entitle her to a decree for specific performance. If she has any right to relief, the damages recoverable at law will afford an adequate remedy.

On bill, answer, replication and proofs.

The bill in this case is filed to compel the specific performance of an agreement alleged by the complainant to have been made by the defendant company for the lease, under special terms, of a lot of land situate in Atlantic City.

The complainant alleges that, by a contract made between herself and the defendant company, the latter agreed to lease to the

complainant the lot of land in question, with the privilege of a fifteen-foot entranceway to the demised premises, and the use of the doors across the entranceway, for the period of ten years, from June 15th, 1901, at the annual rental of $1,200; that it was expressly agreed that, at the expiration of the lease, the defendant company should purchase all improvements erected on the premises by the complainant, at a price to be fixed by three arbitrators, and that, in the meantime, said buildings and improvements should stand as security for the rent to become due during the term; that she paid $100 to the defendant company on account of the rent, for which the defendant gave her a receipt; that she had the privilege of paying the rent in cash or of furnishing security for the same, at her pleasure; that, in conformity with the agreement, she delivered to the attorney of the defendant company two promissory notes, one for $500, payable in two months from date, and one for $6,000, payable in three months from date, both endorsed by a citizen of Atlantic City of large wealth and good financial standing, and that, at the same time, she delivered to him an agreement and lease, which had been prepared under the directions of the defendant company, which agreement was executed by her. The promissory notes and the agreement executed by her, were, she alleges, retained from the 21st of May, 1901, until the 1st of June, when they were returned to her, the company having refused to accept the suretyship of the endorser. The refusal of this security and to deliver possession, the complainant alleges, were due to the fact that the defendant company had found another applicant for the premises at a higher rental.

The complainant further avers that she subsequently tendered to the attorney of the defendant company $1,100, the balance of the rent for the first year, and demanded possession of the property, and that the attorney declined to receive the money, telling her he had no authority, and sent her to the agent of the defendant company; that, on the 3d day of July, 1901, she tendered the $1,100 to the agent of the defendant company, and demanded possession of the property, which he refused. She alleges that she then caused a notice to be served on the defendant company, on July 10th, 1901, demanding possession, stating that she would

sue for specific performance if it was refused to her, and notifying the defendant company that the $1,100 rent would be paid whenever they were willing to accept it, which offer was again refused.

The complainant tenders herself ready to pay the rent reserved by the agreement, and prays that the defendant may be decreed specifically to perform the agreement set forth in the bill, and execute the lease which the defendant company had prepared and which is already signed by the complainant, and to deliver possession of the property to the complainant, and for further relief.

The Columbia Real Estate Company is the sole defendant. It files its answer, denying all the allegations in the bill, except those specifically in the answer admitted. The defendant company admits that negotiations were opened between the parties, looking towards the leasing of the property in question, and that a duplicate copy of a proposed lease was prepared, but avers that it was never executed by the defendant company, nor delivered. The defendant admits that when the negotiations for a lease were begun, the complainant paid $100, which the defendant says it tendered back to the complainant on the 2d day of July, 1901, when it appeared she was unable to carry into effect the agreement for leasing, and that all negotiations between the parties were then and there declared to be off. The defendant avers that, at the time of the first negotiations, the rental-money was agreed to be paid in cash; that complainant asked the defendant to accept notes, which the defendant consented to do if secured by a satisfactory endorser, which the defendant insists was not furnished. The defendant denies the tender of $1,100 on July 1st, 1901, and avers that the complainant neglected and refused to pay the balance of the rental-money, and further avers that the defendant company, before the alleged tender, handed back to the complainant the $100 which had been paid, and notified complainant of defendant's intention to proceed no further in the matter of leasing. The defendant further says that it has leased the premises to other parties, who are now tenants of defendant, actually in the possession of the premises.

Issue was joined on these pleadings, and the cause came to final hearing.

*Mr. Allen B. Endicott,* for the complainant.

*Mr. George A. Bourgeois,* for the defendant.

GREY, V. C.

The bill seeks the specific performance of an alleged agree-ment for the leasing, for ten years, of a lot of land situate in Atlantic City, admittedly owned by the defendant, the Columbia Real Estate Company. The agreement is not alleged, in the bill, to have been in writing. The defence is—*first,* that no agree-ment between the parties touching the alleged leasing was ever finally concluded; it is admitted that negotiations were opened and that they had made some progress towards an agreement, but it is denied that any concluded contract was made between the parties; *secondly,* the defendant insists as the claimed agree-ment is for a lease for a ten-year term, that it must have been evidenced by a writing, signed by the lessor, or by his lawfully-authorized agent, and that no such writing has been shown, &c., nor any equitable excuse for its non-production.

The statute of frauds, in its first section, prescribes the effect which shall be given to leases of land for a longer period than three years when they are not put in writing, signed by the par-ties so making or creating the same, or their agents thereunto lawfully authorized by writing. The phrasing of this clause of the statute is in the words following:

"That all leases, estates, interests of freehold or term of years, or any uncertain interests of, in to or out of any messuages, lands, tenements or hereditaments, made or created, or hereafter to be made or created, by livery and seisin only, or by parol and not put in writing, and signed by the parties so making or creating the same, or their agents thereunto lawfully authorized by writing, shall have the force and effect of leases or estates at will only, and shall not, either in law or equity, be deemed or taken to have any other or greater force or effect any consideration for making any such parol leases or estates notwithstanding except, nevertheless, all leases not exceeding the term of three years from the making thereof." *Gen. Stat. p. 1602 § 1.*

The bill of complaint does not allege that the contract whereby the defendant company "agreed to lease" was in writing. The frame of the bill shows that the agreement that a lease should

be given, and the lease itself, were, in the contemplation of the parties, several and distinct transactions. The proofs also show that there were negotiations between the parties preliminary to an intended leasing. These preliminaries are, to an imperfect extent, evidenced by writings. The following are copies of these preliminary writings:

## "EXHIBIT C 2.

"Agreement made this seventh day of May between Columbia Real Estate Co. of the first part & Mrs. Charlton of Atlantic City of the second part. Witnesseth, that the party of the first part will make a lease for ten years of a certain building on their ground in rear of stores to contain about eighty feet in width by about one hundred feet in depth with a fourteen foot entrance from boardwalk, to consideration to be a rental of twelve hundred dol. per annum payable yearly in advance, lease to date from June 15th, 1901. The party of the first part to be put to no expense whatever in this matter, and security to be given for the rent.

"COLUMBIA REAL ESTATE Co.,
"Witnesseth by                          "By H. G. BERGMAN, Agt.
       "IDA J. ATKINSON.                               "S. A. CHARLTON."

## "EXHIBIT C 3.

"Received Atlantic City, May 7th, 1901, of Mrs. S. A. Charlton, one hundred dol. on acc. of agreement for lease to be made to Mrs. Charlton, for which details are to be settled on.

"COLUMBIA REAL ESTATE Co.,
"By H. G. BERGMAN, Agt."

These papers were signed and passed at the same time from the defendant's company's agent to the complainant. As they relate to the same transaction, they must be deemed to be parts of one instrument. *Exhibit C 2* is a memorandum of an agreement for a lease. *Exhibit C 3* is a receipt for $100 on account of that agreement.

The effect of these two writings shows, on the face of them, that the parties, in their negotiations, had not, by these writings, yet arrived at any contract, the terms of which had been definitely agreed upon between them. The receipt, in express words, recognizes this in the phrase, referring to the lease, "for which details are to be settled on." The proof shows that when these memoranda of May 7th were signed, the details of the lease had not yet been finally "settled on," and were not expressed in those

agreements. Plans for buildings to be erected by the lessee had been submitted and approved, but certain dimensions and angles of the premises which might call for a survey, had not yet been ascertained, and a method of compensating the proposed lessee for her expenditures in improvements, by paying her a price to be fixed by an arbitrator, was yet under discussion, as details of the proposed lease which were yet to be settled. None of these incidents of the proposed lease were set out in the written memoranda of May 7th.

The two memoranda of May 7th are the only writings signed by or for the defendant company. These instruments themselves, as well as the evidence of the negotiations of the parties as to details to be settled, show that, when they were created, no concluded contract had yet been made. No other written papers of any kind was ever "signed by the parties making or creating the same, or by their agents thereunto lawfully authorized in writing," &c.

A comparison of the contract of lease which the bill seeks to have decreed to be made, with these two writings, also shows that the complainant is not asking for the making of a lease, the terms of which are set forth in these two writings, but for quite a different instrument. The bill of complaint prays that the defendant company may be decreed specifically to perform the agreement therein set forth. The agreement for a lease set forth in the bill contains a number of terms, dealing with matters of substance, which are not in any way referred to in the previous written memoranda.

The bill of complaint demands a lease which shall convey "the use of the doors across the entranceway," and which shall oblige the defendant company to "purchase all improvements erected on the premises by the complainant at a price to be fixed by three arbitrators, and that, in the meantime, the said buildings and improvements should stand as security for the rent to become due during the term;" that the complainant should have "the privilege of paying the rent in cash, or of furnishing security for the same, at her pleasure."

None of these incidents, imposing obligations upon the defendant company of great importance (some of which are essentially

part of the lease), are included within the two writings signed by the defendant's company's agent, and above recited. Nowhere, either in pleadings, evidence or argument, is it intimated that the complainant would, in this cause, accept a decree for the making of a lease which did not contain these incidents; on the contrary, it is insisted that the decree shall be for a lease on these terms. We must therefore look elsewhere than to the writings signed by the defendant company to find the terms of the lease which the complainant insists the defendant is bound to make.

These terms are expressed in a prepared draft of a lease, which was never executed by the defendant company, but a copy of which, having been drawn in counterpart, was sent, unsigned, to the complainant, the duplicate being retained by the defendant company. At this stage of the negotiations differences arose between the parties as to security offered for the rent by the complainant. The prepared draft was never signed and delivered by the lessor. The complainant was told that the "negotiations were all off," and that the defendant's agent could not sign the lease. The $100 which the complainant had paid was sent back to her.

The complainant offered in evidence the copy of this unsigned draft of a lease which was sent to her, and it has been marked *Exhibit C 1.* The complainant (proposed lessee) has signed it, but the defendant (proposed lessor) has not. A cursory examination of this draft of lease affords additional proof that the previous written memoranda of May 7th, 1901, signed by the defendant company, did not express a concluded contract between the parties, and that, after they had been made, there were further negotiations, or, if no further negotiations, yet there were terms of the letting already agreed upon which were not included in the written memoranda, though both parties recognized their essentiality as component parts of the lease. These were the "details to be settled on," which were referred to in the memorandum receipt. It is this proposed, but unexecuted, lease which the complainant insists, by her bill of complaint, was agreed to be given as a lease of the premises in question.

This unexecuted paper contains all the above-recited terms as to the use of doors; and obliging the defendant lessor to purchase improvements at an arbitrated price, and making them, mean-

Charlton *v.* Columbia Real Estate Co.

while, stand as security for the rent, and giving the lessee the privilege of paying the rent in cash, or of furnishing security therefor, at her pleasure.

This unexecuted draft of lease has of itself no efficacy as the concluded agreement of the parties, because it was never executed by the lessor. The parties got into a dispute before that was done about the character of the security for the rent, and the proposed lease was declared off, as above stated.

Nothing in all the proofs shows that there ever was a time when, as to each incident of the proposed contract, the parties, came to be of the same mind, and finally contracted, each with the other, that such a lease should be made.

The court of appeals declared, in the case of *Brown* v. *Brown, 6 Stew. Eq. 650,* that, when specific performance is sought, the terms of the contract must have been completely determined and definitely ascertained between the parties. If it be doubtful whether the contract was finally closed, equity will not interfere.

The utmost effect that can be ascribed to the two memoranda of May 7th is, that they amounted to an agreement to enter upon an agreement, upon terms to be afterwards settled between the parties. On the face of the receipt of that date is an express declaration that details of the lease were yet to be settled. Lord Wensleydale, in *Ridgway* v. *Wharton, 6 H. L. Cas. 305,* declares such an agreement to be a contradiction in terms, and that it is absurd to say that one enters into an agreement until the terms of that agreement are settled.

Leaving the effect of the written memoranda of May 7th, which were signed by the defendant company only, all the proofs show that it was always in the contemplation and intent of both parties that a written lease of some sort should be executed by the complainant as well as the defendant which should contain clauses severally binding upon each of them. It was the execution of this instrument, by the signature of both parties, and its delivery, which it was intended should conclude the bargaining. This appears by the fact that the draft of the proposed lease contained various terms not included in the previous written memorandum, but imposing serious obligations upon the parties. These were the details which, when the memorandum of May 7th

was made, were yet to be settled on. This draft of lease never was executed and delivered by the lessor. There never was any complete determination and definite ascertainment of the terms of the contract.

A further objection by defendant is that the unexecuted draft of lease is obnoxious to the statute of frauds as a basis for a decree for specific performance such as is here prayed. This draft of lease purports to convey a ten-year term in lands. It is not in writing signed by or for the party making it (the lessor). The statute prescribes that such an agreement, even if finally concluded between the parties, but not expressed in a signed writing, shall have only the force and effect of a lease at will. This the complainant is not willing to accept. She asks that she be decreed to have a lease for a ten-year term, with all the attending advantages of privilege to erect improvements, which the defendant company shall be obliged to pay for at an arbitrated price. The statute is a bar to any such decree.

The written memoranda being ambiguous in their phrasing, considerable latitude has been allowed, introducing parol proof as to the attending negotiations of the parties, in order to ascertain what was meant by "details to be settled on." Little or no proof has been offered showing that the complainant has done anything in part performance of what she claims was a concluded contract, partly in parol. She paid $100, which has been returned to her. She has since tendered or offered the first year's rental, but this tender was based on the assumption that she had a concluded and binding contract with the defendant. In this she was mistaken, as is above shown. She never entered into possession of the premises, nor made any of the contemplated improvements. She did expend some money to get plans from an architect. None of these incidents constitute such a part performance of a contract as entitled the complainant to the favorable consideration of this court by a decree for specific performance. For all loss or inconvenience she may have suffered, she may, if she has any right, be fully and adequately compensated by an action at law for damages.

There is an additional objection which this court ought to consider on this application for relief by specific performance.

It appears, in a letter of the complainant's solicitor, offered in evidence for complainant, that, before this suit was brought, he was notified that the defendant company had rented the premises in dispute to other parties. There is other proof containing like suggestion. No such other persons have been brought in as defendants in this cause. It may be that such persons are *bona fide* holders, without notice of the alleged equity of the complainant, so that a decree in this suit against the defendant company for specific performance may be of no avail against such other parties.

If this condition should appear, this court would refuse specific performance, even if, as against the defendant company, the complainant was shown to be entitled to it. *Johnson* v. *Hubbell, 2 Stock. 332.*

Upon the whole case, the complainant's bill should be dismissed, with costs.